UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HERMAN SCHALLENBERG | CIVIL ACTION |
| VERSUS | NO. 05-2869 |
| NEEB KEARNEY & COMPANY, INC. | SECTION "K"(4) |

### *ORDER AND OPINION*

Before the Court is "Defendants' Motion for Summary Judgment or Partial Summary Judgment." Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants the motion for summary judgment.

### BACKGROUND

Plaintiff Herman Schallenberg was employed as a warehouse supervisor by defendant Neeb Kearney & Co., Inc. (Neeb Kearney") from February 26, 1997 until October 11, 2004, when his employment was terminated.

In January 2004, plaintiff told his supervisor Joseph Boudreaux that he needed time off from work in order to take his son, who was born with cerebral palsy, to physical therapy. Plaintiff states that Mr. Boudreaux told him that he didn't "think it's a good time to take a leave."[1] Later in January, plaintiff spoke to Mr. Boudreaux again about taking several weeks off of work to take his son to physical therapy. Mr. Boudreaux notified an employee in the Human Resources department who in turn provided plaintiff with the forms necessary to request leave under the Family Medical Leave Act ("FMLA"). Plaintiff completed the forms, and returned them to the Human Resources

---

[1] Deposition of Herman Schallenberg, p. 29 (Doc. 34-4).

department. Thereafter, Neeb Kearney approved plaintiff for FMLA leave from March 22, 2004 through April 23, 2004. On March 4, Mike Lauland, an employee of the Human Resources department, met with plaintiff and provided him with the paperwork stating that his FMLA leave had been approved. Plaintiff states that during that meeting Mr. Lauland told him that he was "going to be made as an example because the company hadn't had a chance to have a Medical Leave Act come before", that his "job would not be protected", and that "he could not guarantee my salary and he could not guarantee my position."[2]

Plaintiff took the approved leave, and because he had accumulated 75.86 hours of consolidated paid leave prior to the commencement of his FMLA leave, he was paid for the first 75.86 hours of his FMLA leave.

Plaintiff returned to work on April 10, 2004. Upon his return to work, plaintiff resumed his same position with the same pay and benefits as he had prior to his leave. Approximately a month after returning to work, plaintiff told Mr. Boudreaux that he might need to take some additional time off from work because he "had to do something with his son."[3] Plaintiff did not indicate how many days he would need to be off from work, nor did he at that time identify the dates that he would need to be off from work. Plaintiff did not specifically request FMLA leave, nor did he ever request the forms necessary to obtain leave under the FMLA. On October 11, 2004, the day before plaintiff alleges that he was scheduled to take additional leave, defendant Neeb Kearney & Co. terminated him.

Mr. Schallenberg filed suit against Neeb Kearney & Company, Inc. and S. Jackson & Son,

---

[2] Deposition of Herman Schallenberg, p. 32-34 (Doc. 34-4).

[3] Deposition of Herman Schallenberg, p. 69 (Doc. 34-4).

Inc, alleging that defendants had discharged him from employment in retaliation for having exercised his rights to leave under FMLA. He also alleged that he had been discharged to prevent his taking additional leave under FMLA. Additionally, plaintiff alleged that his termination breached his employment contract with defendants. Plaintiff seeks back pay, front pay, compensatory damages, punitive damages, and reinstatement of employment, seniority, and benefits, as well as attorneys fees and court costs.

## LAW AND ANALYSIS

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.  Retaliation Claim

The FMLA provides in pertinent part that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. 2615(a)(2).  Plaintiff claims that his employer unlawfully terminated him in order to retaliate against him for having taken FMLA leave.

Relying on the alleged statements by Mike Lauland during his conversation with plaintiff, Mr. Schallenberg contends that there is direct evidence of discrimination.  The Court disagrees. The statements would constitute direct evidence if plaintiff had been terminated prior to returning to work and was alleging a claim for failure to reinstate him to his prior employment.  However, plaintiff returned to work in the same position with the same pay and benefits he had prior to his leave, and is not alleging failure to reinstate.  Rather, he is alleging a retaliation claim and an interference claim. Therefore, Mr. Lauland's statements constitute circumstantial, rather than direct evidence.

Generally, the *McDonnell-Douglass* analytical framework applies in FMLA retaliatory discharge cases based on circumstantial evidence. *See Chaffin v. John H. Carter, Co., Inc.*, 179 F.3d 316, 319-320 (5th Cir. 1999).  However, where as here the employee alleges that discrimination was not the sole reason for discharge, but instead was simply a motivating factor for the termination, a "mixed-motive" framework applies.  *Richardson v. Monitronics International, Inc.*, 434 F.3d 327,

4

333 (5th Cir. 2005). Under the "mixed-motive" framework:

> (1) the employee must make a *prima facie* case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or-and herein lies the modifying distinction-(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination.
>
> If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus. The employer's final burden is effectively that of proving an affirmative defense.

*Id.* at 333 (internal quotation and citation omitted).

To establish a *prima facie* case of retaliation under the FMLA, the employee must show: 1) he is protected under the FMLA; 2) he suffered an adverse employment decision; and either (3a) that he was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because he took FMLA leave. *Hunt v. Rapides Healthcare System, LLC,* 277 F.3 757, 768 (5th Cir. 2001). For purposes of this motion, defendants concede that plaintiff has established a *prima facie* case of retaliation.

The burden now rests on defendants to demonstrate a legitimate, nonretaliatory reason for plaintiff's termination. Defendants contend that they terminated plaintiff due to an ongoing economic downturn in their warehouse business. To support this contention, defendants submit the affidavit of Wallace Binford, Vice President of Operations for The Jackson Kearney Group.[4] The

---

[4]The Jackson Kearney Group is a marketing name for a group of companies including defendants Neeb Kearney & Company, Inc., S. Jackson & Sons, Inc. Gulf Coast Cold Storage, Mississippi Coastal Cargo Company, Inc., and Coastal Cargo of Texas, Inc.

affidavit states that from 2000 through December 2004, Neeb Kearney closed five of it its nine warehouses, and that since January 2005, it has closed all but one of its warehouses, and now has only one warehouse employee. (Doc. 28-3). The affidavit further states that plaintiff worked primarily at Warehouse 12 and that after defendants terminated Mr. Schallenberg, Warehouse 12 became an unmanned warehouse. Defendants have articulated a legitimate, non-discriminatory reason for terminating Mr. Schallenberg.

Plaintiff has not produced any evidence that raises a genuine issue of fact that declining business was pretext for plaintiff's termination. In fact, plaintiff, acknowledges that his employer had been consolidating and closing warehouses.[5] Plaintiff attempts to demonstrate that defendants' proffered reason is a pretext by urging that rather than being terminated he should have been transferred to the Coastal Cargo facility.

Plaintiff admits that he "hated" going to work at the Coastal Cargo facility and that he expressed his dislike for working at that facility to "different people."[6] Wallace Binford, who made the decision to terminate plaintiff, had been "told by my operations managers out there that Herman complained constantly about coming out to work [at Coastal]."[7] Mr. Binford stated that he did not consider transferring Mr. Schallenberg to the Coastal Cargo facility "because our previous attempts to assign him job duties at Coastal Cargo did not work."[8]

Contrary to plaintiff's contention, the fact that other warehouse supervisors also complained

---

[5] Deposition of Herman Schallenberg, p. 23. (Doc. 28-4,).

[6] Deposition of Herman Schallenberg, p. 26-27 (Doc. 28-4).

[7] Deposition of Wallace Binford, p. 151 (Doc. 34-6).

[8] Affidavit of Wallace Binford (Doc. 28-3).

about working at the Coastal Cargo facility does not raise a genuine issue of material fact on the issue of pretext. It is well established that "'discrimination laws [are not] vehicles for second-guessing of business decisions.'" *Deines v. Texas Department of Protective & Regulatory Services,* 164 F.3d 277, 281 (5th Cir. 1999), *quoting Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997). Considering plaintiff's repeated expressions of dissatisfaction with working at the Coastal Cargo facility, the fact that other warehouse supervisors, some of whom earned more than plaintiff, were transferred to jobs at Coastal Cargo rather than being terminated, does not raise a genuine issue concerning pretext.

Plaintiff has also failed to raise a genuine issue of fact that his termination was motivated by more than one reason, one of which was discrimination. Mr. Schallenberg attempts to establish discrimination using the statements allegedly made by Mike Lauland during the meeting he had with plaintiff after plaintiff's leave was approved but prior to plaintiff actually taking the leave. Mr. Schallenberg states Mr. Lauland said that plaintiff was "going to be made as an example because the company hadn't had a chance to have a Medical Leave Act come before", that his "job would not be protected", and that "he could not guarantee my salary and he could not guarantee my position."[9] That evidence is inconsistent with the "Employer Response to Employee Request for Family or Medical Leave" form provided to plaintiff by Mr. Lauland during the same meeting at which plaintiff alleges Mr. Lauland made the discriminatory statements. The form clearly states "you must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from leave" The parties agree that when Mr. Schallenberg returned to work following his FMLA leave, he returned to his previous job with the same pay and

---

[9] Deposition of Herman Schallenberg, p. 32 - 34 (Doc. 34-4).

7

benefits.

Additionally, plaintiff acknowledged that when he returned to work no one expressed dissatisfaction with him for having taken leave.[10]  Even assuming *arguendo* that Mike Lauland made the alleged hostile statements to plaintiff, it is undisputed that Wallace Binford made the decision to terminate plaintiff's employment, that he did not consult with Mr. Lauland about that decision, and that Mr. Lauland had no input into the decision to terminate plaintiff.  It is also undisputed that Joe Boudreaux did not have any input into the decision to terminate Mr. Schallenberg. Plaintiff has not produced any evidence of animosity by Mr. Binford towards plaintiff as a result of plaintiff's use of FMLA leave.

It is also significant that the lapse of approximately five months between the time plaintiff returned from FMLA leave and his termination diminishes any inference of retaliatory motive. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992).  Because plaintiff has failed to carry his burden of raising a genuine issue of material fact as to either discrimination or pretext, defendants are entitled to summary judgment on the retaliation claim.

### B.  Interference Claim

Plaintiff also asserts that defendants acted unlawfully by terminating him in order to interfere with his ability to take FMLA leave in the future.  Applying the same analysis outlined herein above, the Court concludes that defendants have established a legitimate, non-discriminatory reason for plaintiff's termination, and that plaintiff has not raised a genuine issue of material fact as to pretext or discrimination.

As noted previously, it is undisputed that Wallace Binford made the decision to terminate

---

[10] Deposition of Herman Schallenberg, p. 58 (Doc. 34-4).

plaintiff, and it is also undisputed that Mr. Binford did not consult with Mike Lauland prior to terminating plaintiff and that Mike Lauland had no input into the decision to terminate Wallace Binford.  There is no evidence that Mr. Binford knew that plaintiff intended to take additional FMLA leave or that he might need to take additional FMLA leave.  Although plaintiff did tell Joe Boudreaux, his direct supervisor, that he might need to take a few days off in the future, there is no evidence that Mr. Boudreaux communicated that information to anyone else employed by defendants.  Because plaintiff has failed to produce any evidence that Wallace Binford knew that plaintiff might take additional FMLA leave, plaintiff has failed to raise a genuine issue concerning whether defendants terminated plaintiff's employment to prevent him from taking such leave in the future.

### C.  Punitive Damages and Breach of Contract

Plaintiff has stated that he has no opposition to the dismissal of his claims for breach of contract and punitive damages; therefore, defendants' motion is granted as to those claims.

Considering the record taken as a whole, the Court concludes that a rational trier of fact would not find for the plaintiff.  Therefore plaintiff has failed to raise a genuine issue of fact for trial.  Accordingly,

**IT IS ORDERED THAT** defendants' motion for summary judgment is granted; plaintiff's claims are hereby dismissed with prejudice.

New Orleans, Louisiana this 16th day of March, 2007.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE